**RICE FOOD MARKETS, INC., Appellant,**

v.

**Frederick P. WILLIAMS, Appellee.**

No. 01–00–00029–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 3, 2001.

J. Preston Wrotenbery, Kevin D. Jewell, Houston, for Appellant.

Bernadette Johnlewis, Houston, for appellee.

Panel consists of WILSON, NUCHIA, and DUGGAN*, JJ.

## OPINION

NUCHIA, Justice.

Frederick P. Williams, appellant, sued his employer, Rice Food Markets, Inc. ("Rice"), for a work-related injury. Rice is

---

\* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

a non-subscriber under the Texas Worker's Compensation Act. Trial was to a jury, which awarded Williams $64,500 in actual damages plus pre-judgment interest. We reverse and remand with instructions to the trial court.

## BACKGROUND

Williams was employed as a meat manager for Rice. In April 1996, he was rolling a cart loaded with cases of chicken out of the cooler. Just outside the cooler there was a drain in the floor with a slight dip. As he rolled the cart over the drain, the cart tipped, pulling his arm down suddenly and spilling the cases of chickens. He experienced a great deal of pain in his arm and went to the emergency room at Southwest Memorial Hospital as instructed by his employer. His injury was later diagnosed as a complete rupture of the biceps tendon, which was surgically repaired.

Williams sued Rice for negligence, and his wife sued for loss of consortium. The jury awarded Williams $9,500 in past medical expenses, $5,000 for pain, and $50,000 for past mental anguish. The jury did not award anything to Mrs. Williams for loss of consortium.

## DISCUSSION

### Waiver and/or Estoppel

In its first issue, Rice contends that, because Williams accepted benefits under Rice's occupational benefits plan, he is barred by the doctrines of waiver and/or estoppel from bringing this action because he agreed to release that claim if he accepted benefits under the plan. Rice argues that it has established its waiver and/or estoppel defense as a matter of law.[1]

Waiver and estoppel are affirmative defenses that must be pleaded and proved. Tex.R. Civ. P. 94; *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 805 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Rice asserted waiver and estoppel in its answer and argued these issues to the trial court, and the trial court ruled that they were issues of fact to be determined by the jury. Rice did not request that any issues be presented to the jury on waiver or estoppel.

Although Rice was a non-subscriber under the Workers' Compensation Act, it had an Occupational Benefits Plan, which provided benefits for workers who sustained job-related injuries. Employees were given notice that Rice did not have workers' compensation insurance and that Rice had an alternative medical and wage benefit plan for job-related injuries and illnesses. The notice of the alternative plan stated, "To receive payment of medical expenses and wage continuance, the following conditions must be fulfilled." Five conditions are included: (1) the injury must be work related; (2) the injury must be reported immediately; (3) the employee must be treated by an approved physician; (4) the employee must assist the manager in completing an incident report; and (5) in consideration of Rice's review of the claim and payment of 100% of authorized medical expenses and a percentage of salary, the employee must report to a manager as requested and sign a release from further liability if benefits are accepted. The document concludes:

I HEREBY ACKNOWLEDGE RECEIPT OF A COPY OF THIS PROGRAM AND HAVE BEEN GIVEN THE OPPORTUNITY TO ASK ANY

---

1. We note that waiver and estoppel are separate defenses. Rice argues them as one defense and sets out the elements of waiver in its brief. Most of the cases cited in his argument deal with waiver and not with estoppel.

QUESTIONS I MAY HAVE OF MY MANAGER OR SUPERVISOR. I HAVE BEEN GIVEN A COPY OF THIS DOCUMENT FOR MY PERSONAL RECORDS AND FOR FUTURE REFERENCE.

Williams and his wife signed the document.

■ Rice contends that, by signing this document, Williams and his wife entered into an agreement with Rice. Rice further argues that Williams satisfied conditions one through four of this "agreement" and, therefore, cannot refuse to comply with the final condition.

■ Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 911 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Rice did not establish as a matter of law that Williams intentionally relinquished his right to bring a common law negligence suit against Rice. Williams's acceptance of some initial benefits under the plan before notifying Rice that he would not participate in the plan, at the most, raised a fact issue regarding whether Williams's conduct was inconsistent with claiming a right to file suit. Therefore, Rice did not establish its waiver defense as a matter of law.

The cases cited by Rice in support of its waiver issue are not applicable to the facts of this case. They involve waivers in writing and signed by the employee,[2] suits by the employee to obtain benefits under the insurance plan,[3] and a declaratory judgment action determining that the insurance company did not have a right of subrogation in the employee's suit against a third-party tortfeasor.[4]

Rice did not argue its estoppel defense separately from its waiver defense at trial, nor does it make a separate argument on appeal. Rice has therefore waived its complaints regarding estoppel as a defense, and we decline to address it separately. *See* Tex.R.App. P. 33.1.

We overrule Rice's first issue.

### *Preemption by ERISA*

In its second issue, Rice contends that (1) by instituting the benefit process under Rice's plan and accepting and retaining benefits, Williams triggered his obligation to execute a release and (2) Williams's suit is preempted by ERISA[5] because the plan is a qualifying plan under ERISA. In its brief, Rice recognizes that in *Keifer v. Spring Shadows Glen*, 934 S.W.2d 785 (Tex.App.—Houston [1st Dist.] 1996, writ denied), this Court held that a common law negligence suit for a work-related injury against a non-subscriber employer does not relate to the employer's ERISA plan and is therefore not preempted by ERISA. Rice argues that the present case is distinguishable from *Keifer* because Williams accepted benefits under Rice's plan. We disagree.

■ As in *Keifer*, Rice's workers' compensation plan was qualified under ERISA. However, Williams was not seeking benefits under the plan, nor was he

2. *Brito v. Intex Aviation Servs., Inc.,* 879 F.Supp. 650 (N.D.Tex.1995).

3. *Collier v. Allstate Ins. Co.,* 395 F.2d 719 (5th Cir.1968); *Tigrett v. Heritage Bldg. Co.,* 533 S.W.2d 65 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.); *Employers Mut. Cas. Co. v. Poorman,* 428 S.W.2d 698 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.).

4. *United States Fidelity & Guar. Co. v. Valdez,* 390 S.W.2d 485 (Tex.Civ.App.—Houston [1st Dist.] 1965, writ ref'd n.r.e.).

5. Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 et seq.

complaining about the administration of the plan. His lawsuit did not relate to the ERISA plan, but was a negligence action complaining of an unsafe workplace. Therefore, the lawsuit was not preempted by ERISA. *See Keifer,* 934 S.W.2d at 788; *see also Hook v. Morrison Milling Co.,* 38 F.3d 776, 786 (5th Cir.1994) (holding that a lawsuit alleging negligence in maintaining an unsafe work place against an employer does not "relate to" the employer's ERISA plan and therefore is not preempted by ERISA).

Regarding Williams's acceptance and retention of benefits, it is uncontested that Rice paid some of Williams's medical expenses under the plan. According to a chronology presented by Rice, the following events occurred: Williams was injured on April 5, 1996; his surgery was on May 8, 1996; on May 15, 1996, Williams's attorney sent a letter to Rice stating that Williams would no longer participate in the plan. Between April 5 and May 15, 1996, the only medical bill paid by Rice was $55 to Memorial Radiology for treatment on April 5, 1996. After May 15, 1996, Rice paid approximately $1005 in additional medical expenses related to Williams's injury. Rice concedes that Williams's total medical expenses relating to his injury were over $7,800.[6] Thus, Rice paid only a small portion of Williams's medical expenses, and most of the payments were made after Rice had notice that Williams would not participate in the plan.

■ With regard to Williams's "obligation" to execute a release, the document signed by Williams and his wife was not, as it has been characterized by Rice, an agreement. It was merely an acknowledgment of the receipt of a copy of the plan and, by implication, knowledge of the plan. Paragraph 5 of the document states the conditions under which the employee is obligated to sign a release: "if you accept the benefits awarded by the incident review committee."

The record is silent regarding the benefits awarded by the incident review committee in this case. However, it is clear that Williams notified Rice that he would not participate in the plan. There is nothing in the record to indicate that Rice demanded that Williams reimburse Rice for medical expenses already paid. Furthermore, Rice did not request that the charge to the jury include an offset for expenses paid by Rice.

We overrule Rice's second issue.

### Mental Anguish

In its third issue, Rice contends the mental anguish award is not supported by legally or factually sufficient evidence. We follow the usual standards of review. *See Vannerson v. Vannerson,* 857 S.W.2d 659, 666 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (legal sufficiency); *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989) (factual sufficiency).

■ An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine. *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996); *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex. 1995). When a plaintiff does not present evidence of the nature, duration, or severity of mental anguish, the reviewing court must determine whether there is "any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or an-

---

**6.** The jury's award of $9,500 is challenged by Rice in issue four.

ger' to support any award of damages." *Id.* (quoting *J.B. Custom Design & Bldg. v. Clawson,* 794 S.W.2d 38, 43 (Tex.App.— Houston [1st Dist.] 1990, no writ)).

In his brief, Williams refers us to 17 record references which are, according to Williams, his testimony "to his pain and mental anguish." In 12 of those references, Williams refers only to the pain that resulted from his injury. Because the jury made separate awards for pain and mental anguish, evidence of Williams's pain is not relevant to Rice's challenge of the jury's award for mental anguish.

Williams's testimony addressing his mental state in connection with his injury was as follows:

1. Williams had difficulty with the MRI because he is claustrophobic. His sister held his hand through the procedure, and he was ashamed to let his wife know. Nevertheless, his wife came to the hospital, and everything was fine.

2. He was a little apprehensive about the surgery because he had never had surgery or been under an anesthetic before. He did not know how it would affect him; he had a lot of questions and experienced anguish.

3. Regarding its affect on his daily routine, he would think about things, worry, agonize, wonder what would happen next. He had no income, and medical bills and other bills were due.

4. His wife did certain personal things he usually did for himself; it was a little bit humbling.

5. It was not easy to accept that he was not taking care of his family. He depended on his wife; that is what husbands and wives do.

■ By this testimony, Williams did not present evidence of the nature, duration, or severity of his mental anguish. His testimony regarding his claustrophobia, his apprehension regarding surgery, his worry over his finances, and his concern about the assistance given him by his wife do not reveal a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. We hold that Williams's testimony is legally insufficient to establish the existence of compensable mental anguish. Accordingly, we sustain Rice's third issue.

### Medical Expenses

In its fourth issue, Rice contends that the award of medical expenses is not supported by legally or factually sufficient evidence. Rice argues that, because plaintiffs' exhibits 4, 5, and 6 were the only medical bills admitted into evidence, and the total amount of these three exhibits was $7,804.45, there was insufficient evidence to support the jury's award of $9,500 for medical expenses.

■ Williams responds that, in addition to plaintiffs' exhibits 4, 5, and 6, he introduced testimony about other expenses related to his injury. However, the only testimony to which Williams directs us regarding expenses not reflected in these three exhibits concerned three or four visits for physical therapy at $75 per visit. Thus, the evidence introduced established medical expenses of $7,804.45 plus up to $300 for physical therapy for a total of $8,104.45. Therefore, there was no evidence to support the jury's award of $9,500. Accordingly, we sustain Rice's fourth issue.

### CONCLUSION

We reverse the judgment and remand this cause to the trial court for the sole purpose of entering judgment consistent with this opinion, with instructions to enter a judgment that appellee, Frederick P.

Williams, take-nothing from appellant, Rice Food Markets, Inc., on his claim for mental anguish and (2) that appellee, Frederick P. Williams, be awarded $5,000 on his claim for physical pain in the past and $8,104.45 in medical expenses for a total award of $13,104.45 plus prejudgment interest and costs of court.

WILSON, Justice, dissenting.

WILSON, Justice, dissenting.

The majority concludes that Mr. Williams failed to provide the jury with legally sufficient evidence to support its award of $50,000 for mental anguish damages in the past resulting from the occurrence in question. Because I believe that a plaintiff who proves he has an objective injury, resulting in a surgery with general anesthesia [1] administered, has demonstrated as a matter of law at least a scintilla of evidence on the issue of mental anguish, I respectfully dissent.

The majority cites *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995), as fundamental authority for its holding. Yet in *Parkway*, the supreme court said,

> .... it is nevertheless clear that an award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine. Such evidence, whether in the form of the claimants' own testimony, that of third parties, or that of experts, is more likely to provide the fact finder with adequate details to assess mental anguish claims. **Although we stop short of requiring this type of evidence in *all* cases in which mental anguish damages are sought,** the absence of this type of evidence, particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages.

*Id.* (Emphasis added.)

The court further stated,

> Not only is the record devoid of direct evidence of the nature, duration, or severity of the Woodruffs' mental anguish, there is also no **circumstantial evidence** other than the fact of the flooding itself to support any award of mental anguish.

*Id.* at 445. (Emphasis added.)

The problem discussed at length in *Parkway*, the difficulty in truthfully measuring the extent of mental anguish damages in cases in which there is no objective injury, is not present in this case. The court does not close the door on the circumstantial impact of the injury itself on ascertaining a proper level of mental anguish damages. The supreme court, early in its historical discussion of mental anguish damages, stated,

> .... The inherently subjective nature of mental anguish and the concomitant potential for false claims were two of the most commonly cited reasons for skepticism about such claims. Exceptions to the general rule gradually emerged, falling into roughly two categories. Recovery for mental anguish was permitted when the mental suffering was ... accompanied by a physical injury resulting from a physical impact.... **Once the threshold requirements of physical injury and impact [are established] ..., recovery of mental an-**

---

1. The medical records in evidence indicate Mr. Williams was under general anesthesia for two and one-half hours.

guish damages was not hard to justi-fy.

*Id.* at 442 (citations omitted).

In the same year the supreme court decided *Parkway*, it also decided *State Farm Life Insurance Co. v. Beaston*, 907 S.W.2d 430 (Tex.1995), in which it said, citing *Parkway*,

> Courts traditionally have been reluctant to allow recovery of damages for emotional distress without some additional threshold showing, for example, that the mental anguish was accompanied by a physical injury "resulting from a physical impact or was produced by a particularly upsetting or disturbing event."

*Id.* at 435; see also *City of Tyler v. Likes*, 962 S.W.2d 489, 494–95 (Tex.1997) (the supreme court, again citing *Parkway*, says it "frequently demands direct evidence"); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex.1997) (the supreme court continues to use "in most cases" language when discussing the need for direct evidence).

The majority fails to consider in its analysis, notwithstanding the discussion of circumstantial evidence in *Parkway*, any circumstantial evidence of Mr. Williams's mental anguish. He had surgery for which he had a general anesthetic. Because the jury found by implication that the surgery was a direct result of Rice's negligence, I would hold (I believe consistent with *Parkway*) that the presence of an objective injury requiring a surgery [2] and general anesthetic alone is more than a scintilla of evidence upon which Rice's challenge to the legal sufficiency of the evidence must fail.

In addition, evidence of Mr. Williams's claim of mental anguish goes beyond the fact of the surgery alone. Mr. Williams thought he faced the prospect of going from self-sufficiency to dependency due to his injury. The loss of self-worth in his own mind is yet another factor added to the surgery that provides the scintilla of evidence necessary to overcome Rice's legal challenge to the evidence.

Finally, the majority says that, "Because the jury made separate awards for pain and mental anguish, evidence of Williams's pain is not relevant to Rice's challenge of the jury's award for mental anguish." I respectfully disagree with this statement and conclusion. Pain and mental anguish are generally submitted together and not separately. If the awards had been reversed or combined in this case, I would suggest that the award(s) would have been summarily affirmed even if appealed. A $50,000 award for pain, alone or combined with mental anguish, would probably have been received without objection. Pain and mental anguish go together. I would hold that any evidence of Mr. Williams's pain is some circumstantial evidence of mental anguish to be considered in determining whether the record provides a scintilla of evidence on the mental anguish issue under the *Parkway* test.

---

**2.** The consent form, signed by Mr. Williams, giving the doctor permission to operate contained warnings of the possibility of death from the anesthesia and from the surgery itself. There were additional warnings given relative to any blood transfusion that may have become necessary. The dangers outlined to Mr. Williams from taking blood included kidney failure, heart failure, hepatitis, and AIDS.