Opinion issued June 7, 2007

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00088-CV






JOHN EL-KHOURY, Appellant


V.


BENJAMINE KHEIR, Appellee






On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2001-64663






O P I N I O N


 This defamation case arises from a dispute between private individuals. 
Appellee, Benjamine Kheir claimed that appellant, John El-Khoury, defamed him by
accusing him of not paying a debt. Both parties disputed the underlying debt at trial. 
A jury found that El-Khoury defamed Kheir, that Kheir incurred $25,000 in actual
damages for his mental anguish, and that El-Khoury acted with malice that entitled
Kheir to $147,000 in punitive damages. The jury also rejected the parties' cross-actions on the claimed debt and awarded attorney's fees to Kheir for trial and
contingent attorney's fees for appeal. In five points of error, El-Khoury contends that
remand for a new trial is proper because (1) the evidence is (a) legally and factually
insufficient to support the jury's finding that he defamed Kheir, (b) legally
insufficient to support either the actual damage or punitive damage awards, and (c)
factually insufficient "to support entry of judgment for Kheir on [his] declaratory
judgment action" and (2) the award of attorney's fees to Kheir is "inequitable and
unjust." 

 We affirm in part and reverse and remand in part.

Factual and Procedural Background


 Kheir and El-Khoury are residents of the same village in Lebanon and are
acquainted with one another. Kheir's claims in this lawsuit pertain to an "Agreement
to Transfer Partnership Interest and Stock Ownership in Corporation" (agreement to
transfer). The corporation in question is a Texas corporation known as K&K
Investment, Inc. (K&K), which operated a car dealership with two locations in
Houston. Kheir's and El-Khoury's names and signatures appear in various forms and
on several documents relating to the sale of a Texas corporation, including the
agreement to transfer itself. The version of the agreement to transfer that forms the
basis of this lawsuit recites that Kheir is indebted to El-Khoury in the amount of
$147,000 in connection with the sale of K&K. Before Kheir filed this action, El-Khoury sued him in Lebanon to enforce the agreement to transfer. Kheir has asserted
counterclaims in that action.

 Concerning the defamation claim, it is undisputed that both Kheir and El-Khoury are private individuals. Kheir claimed that El Khoury slandered him by
communicating to others that Kheir had agreed to pay El Khoury $147,000, but had
not kept his promise. Kheir's pleadings state that El Khoury's statements were
"entirely false" and made maliciously, thus entitling Kheir to general damages for
injury to his reputation, special damages, and punitive damages. Kheir also sought
to set aside the agreement to transfer on grounds of fraud. Kheir claimed that he had
never signed the agreement to transfer and sought a declaration to rescind it. El-Khoury filed a counterclaim contending that Kheir owed the $147,000 and denied
making allegedly defamatory statements. 

 After a four-day trial, the trial court submitted 14 questions to the jury, which
found as follows:

  El-Khoury did not fail to comply with the agreement to transfer and did
not commit fraud in selling his interest in K&K (questions 1 and 2); (1) 


  El-Khoury's statements, "that he had not been paid and/or fully paid for
his interest" in K&K, were defamatory (question 5); 


  El-Khoury's defamatory statements proximately caused Kheir $25,000
in mental anguish and suffering (2) (question 6); 


  clear and convincing evidence that the harm to Kheir resulted from
malice (question 7);


  $147,000 should be assessed against El-Khoury as exemplary damages
(question 8);


  Kheir did not promise $147,000 to El-Khoury in exchange for the
agreement to transfer concerning K&K (question 10);


  A reasonable fee for Kheir's attorney's services was $40,000 for
preparation and trial, $7,500 for an appeal to this Court, and $5,000 for
an appeal to the Supreme Court of Texas (question 11);


  Kheir and El-Khoury did not enter into an agreement providing that
Kheir would purchase all of El-Khoury's interest in K&K for $147,000,
and Kheir did not "fail to comply with the [a]greement (question 12)." (3) 


Defamation--Sufficiency of Evidence of Damages


A. Elements of Defamation Claim

 To prevail on his claim that El-Khoury defamed him, Kheir had to prove that
El-Khoury (1) published a statement about Kheir, a private individual rather than a
public figure, (2) that was defamatory concerning Kheir, while (3) acting negligently
regarding the truth of the statement. WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568,
571 (Tex. 1998); Harvest House Publishers v. Local Church, 190 S.W.3d 204, 210
(Tex. App.--Houston [1st Dist.] 2006, pet. denied); Saudi v. Brieven, 176 S.W.3d
108, 117-18 (Tex. App.--Houston [1st Dist.] 2004, pet. denied). (4)
 To constitute
defamation, the published statement must have been false, which Kheir had the
burden to prove. See Hearst Corp. v. Skeen, 159 S.W.3d 633, 636-37 n.1 (Tex. 2005)
(citing Bentley v. Bunton, 94 S.W.3d 561, 586-87 (Tex. 2002)). 

B. Actual Damages--Mental Anguish

 It is axiomatic that Kheir could not prevail unless he also proved that he
suffered actual damages as a result of the alleged defamation. See WFAA-TV, 978
S.W.2d at 571; Brown v. Swett & Crawford of Tex., Inc., 178 S.W.3d 373, 382 (Tex.
App.--Houston [1st Dist.] 2005, no pet.). In this case, the jury awarded nothing for
the following elements of claimed damages: lost profits; harm to Kheir's "good name
and character among his . . . friends, neighbors, or acquaintances; his "good standing
in the community"; or his "personal humiliation." The only damages awarded were
for Kheir's "mental anguish and suffering," which the jury assessed at $25,000 as fair
and reasonable compensation for damage caused by El-Khoury's alleged statements. 
 In his second point of error, El-Khoury contends that the evidence is legally
insufficient to support the jury's $25,000 award for mental anguish and suffering. We
agree. (5)

 1. Error Preserved in Motion for New Trial

 To preserve a complaint for appellate review, the record must show that El-Khoury complained to the trial court by a timely request, objection, or motion, and
that the trial court ruled on or refused to rule on the request, objection, or motion. See
Tex. R. App. P. 33.1(a). More specifically, to preserve his legal-sufficiency challenge
to the jury's award of $25,000 in damages for Kheir's mental anguish and suffering,
El-Khoury had to assert his challenge in (1) a motion for directed verdict; (2) an
objection to submitting question 6, concerning actual damages, including damages
for mental anguish and suffering, to the jury; (3) a motion for judgment
notwithstanding the verdict; (4) a motion to disregard the jury's answer to a vital fact
issue; or (5) a motion for new trial. See Cecil v. Smith, 804 S.W.2d 509, 510-11
(Tex. 1991); Aero Energy, Inc. v. Circle C Drilling Co., 699 S.W.2d 821, 822 (Tex.
1985); UPS, Inc. v. Tasdemiroglu, 25 S.W.3d 914, 916 (Tex. App.--Houston [14th
Dist.] 2000, pet. denied). In this case, El-Khoury asserted his challenges solely in his
motion for new trial. 
 2. Standard of Review--Legal Sufficiency 

 We must sustain a legal sufficiency point (1) when there is a complete absence
of a vital fact; (2) when rules of law or evidence preclude according weight to the
only evidence offered to prove a vital fact; (3) when the evidence offered to prove a
vital fact is no more than a scintilla; or (4) when the evidence conclusively establishes
the opposite of the vital fact. See City of Keller v. Wilson, 168 S.W.3d 802, 810 &
nn. 15-16 (Tex. 2005) (citations omitted). In City of Keller, the supreme court
reexamined the standard of review for legal-sufficiency challenges. "The final test
for legal sufficiency," concluded the court, "must always be whether the evidence at
trial would enable reasonable and fair-minded people to reach the verdict under
review." Id. at 827. "[L]egal-sufficiency review in the proper light must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not." Id. If the evidence "would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." 
See id. at 822. As long as the evidence falls within "the zone of reasonable
disagreement," a "reviewing court cannot substitute its judgment for that of the trier-of-fact." Id. at 822. 

 3. Recovery of Mental Anguish Damages


 Mental anguish damages are recoverable in a defamation case. Bentley v.
Bunton, 94 S.W.3d 561, 604 (Tex. 2002) (Bentley I). In Bentley I, the supreme court
applied the legal-sufficiency test to mental anguish damages awarded as
compensation for injuries and mental strain arising from damage to reputation and
good name stemming from accusations of corruption by a media defendant. See id.
at 575. Though a majority of the court agreed that Bentley had provided legally
sufficient evidence of some amount of mental anguish, id. at 606, a four-judge
plurality concluded there was legally insufficient evidence to support $7 million in
mental anguish damages. Id. at 607-08. On remand to consider that award, the Tyler
Court of Appeals concluded that the $7 million mental anguish award was
"unsupported by the evidence" and "so large as to be contrary to reason"; determined
from the trial record that $150,000 would be "reasonable compensation"; and
suggested a $6,850,000 remittitur. Bunton v. Bentley, 176 S.W.3d 18 (Tex.
App.--Tyler 2003), aff'd in part and rev'd in part, 153 S.W.3d 50 (Tex. 2004). 

 In addressing the remitted award in Bunton v. Bentley, 153 S.W.3d 50 (Tex.
2004) (Bentley II), the supreme court concluded that legally sufficient evidence
supported awarding $150,000 to Bentley as compensatory damages for his mental
anguish. Id. at 53. Citing Bentley I, the court noted that "the ordeal" of his
defamation had cost Bentley time, deprived him of sleep, caused him embarrassment
in the community in which he had spent almost all of his life, disrupted his family,
and distressed his children at school. Bentley II, 153 S.W.3d at 53 (citing Bentley I,
94 S.W.3d at 606-07). Moreover, evidence from Bentley's friends showed that he
had become depressed, that his honor and integrity had been impugned, and that his
family's related suffering added to his own distress; in short, "he would never be the
same." Id. In Bentley's own words, the experience of being accused of corruption
was "the worst of his life." Bentley I, 94 S.W.3d at 606-07. 

 Both Bentley decisions reflect the concerns initially expressed by the supreme
court in Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607 (Tex. 1996),
and Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex. 1995), that legally sufficient
proof support mental anguish awards in order to "ensure" that recovery for such non-economic damages constitute compensation for actual injuries to the plaintiff rather
than "a disguised disapproval of the defendant." Bentley I, 94 S.W.3d at 605, 606-07
(citing and quoting from Saenz, 925 S.W.2d at 614). (6) 

 According to the definition derived from Parkway, mental anguish 

 implies a relatively high degree of mental pain and distress. It is more
than mere disappointment, anger, resentment or embarrassment,
although it may include all of these. It includes a mental sensation of
pain resulting from such painful emotions as grief, severe
disappointment, indignation, wounded pride, shame, despair and/or
public humiliation.


See Parkway, 901 S.W.2d at 444 (quoting Trevino v. Southwestern Bell Tel. Co., 582
S.W.2d 582, 584 (Tex. Civ. App.--Corpus Christi 1979, no writ)). (7) Recognizing the
"somewhat unwieldy" nature of the definition, the supreme court acknowledged that
the definition nonetheless requires the jury to distinguish between "lesser" reactions
and degrees of emotions, for example, disappointment, embarrassment, and anger, for
which there is no compensation, and more extreme degrees of emotions, for example,
severe disappointment, wounded pride, and indignation, which may be compensable
in a proper case, see id. at 444-45 (citing J.B. Custom Design & Bldg. v. Clauson,
794 S.W.2d 30, 43 (Tex. App.--Houston [1st Dist.] 1990, no writ), on a further
showing that these emotions substantially disrupted the plaintiff's daily routine. See
Saenz, 925 S.W.2d at 614 (citing Parkway, 901 S.W.2d at 444); see also Rice Food
Mkts, Inc. v. Williams, 47 S.W.3d 734, 735-36, 738-39 (Tex. App.--Houston [1st
Dist.] 2001, pet. denied) (applying Saenz and Parkway standards to jury award of
mental anguish damages to employee who sued nonsubscriber employer for
maintaining unsafe workplace and holding that award not supported by legally
sufficient evidence). 

 Evidence of "adequate details" to assess mental anguish may derive from the
claimant's own testimony, the testimony of third parties, or testimony by expert
witnesses. Parkway, 901 S.W.2d at 444. Though the supreme court declined, or
"stop[ped] short," of requiring this type of evidence whenever a plaintiff seeks mental
anguish damages, the court emphasized that lack of this evidence, "particularly when
it can be readily supplied or procured by the plaintiff, justifies close scrutiny of other
evidence offered" to support damages for mental anguish. Id.

 In addition to evidence of compensable mental anguish, under the standards
just stated, some evidence must justify the amount awarded as compensation. Saenz,
925 S.W.2d at 614; see Bentley II, 153 S.W.3d at 53. Consistent with the language
of the standard jury charge used in this case, juries may not "simply pick a number
and put it in the blank," but must determine an amount that "fairly and reasonably"
compensates for mental anguish "that causes 'substantial disruption in . . . daily
routine' or a 'high degree of mental pain and distress.'" Saenz, 925 S.W.2d at 614
(citing Parkway, 901 S.W.2d at 444). 

 Applying these substantive guidelines within the parameters of the Keller
legal-sufficiency standards, we agree with El-Khoury that the evidence in this case
is not legally sufficient to support the jury's awarding Kheir $25,000 as "fair" and
"reasonable" compensation for mental anguish and suffering from allegedly
defamatory statements by El-Khoury to others concerning Kheir's failure to pay the
$147,000 consideration recited in the agreement to transfer. 

 Kheir and his wife provided the only testimony concerning his claim of mental
anguish. There was no testimony by third parties and no expert testimony. Kheir
generally attested to "stress" and "anxiety," and also stated that he lost weight,
experienced headaches, and had difficulty sleeping that sometimes required him to
take a sleeping pill. Though Kheir's wife stated that he was "half the man he was,"
the only specifics she provided were that he was "very stressed" and had difficulty
sleeping. Neither Kheir nor his wife described a "high degree" of pain or distress that
"substantially" disrupted Kheir's daily routine. See Saenz, 925 S.W.2d at 614;
Parkway, 901 S.W.2d at 444. In addition, neither Kheir nor his wife attempted to
establish a causal connection between the defamatory statements allegedly made by
El-Khoury and Kheir's stress and anxiety. 

 To the contrary, Kheir's testimony consistently linked his stress to damage to
his reputation or lack of respect among the 3,000 to 4,000 people in the Lebanese
village where he lived and had his business. Yet, the jury rejected any amount of
damages, either for harm, if any, to Kheir's "good name and character among his . .
. friends, neighbors, and acquaintances," or harm, if any, to his "good standing in the
community." Pursuant to the jury's responses to other questions in the charge,
therefore, as well as the standards imposed by the Parkway, Saenz, and Bentley line
of cases, which require proof of a high degree of mental pain and distress that
surpasses worry, anxiety, vexation, embarrassment, or anger, see Parkway, 901
S.W.2d at 444, Kheir's complaints relating to damage or lack of respect are no
evidence of mental anguish and suffering that derive from any allegedly defamatory
statements by El-Khoury. 

 Kheir also referred to his inability to obtain credit for a planned expansion of
his business and stated that vendors and suppliers discontinued their previous practice
of permitting him to pay accumulated invoices at the end of a season. But, the record
establishes that Kheir's credit problems resulted from a lien that was automatically
imposed on some of Kheir's property after El-Khoury filed suit in Lebanon to enforce
the agreement to transfer. As the record further demonstrates, news of lawsuits
appears in newspapers in Lebanon. Yet, Kheir bases his claims in this lawsuit on El-Khoury's allegedly defamatory statements to others, rather than on allegations in his
lawsuit, which would be privileged regardless and, thus, not actionable. See Bird v.
W.C.W., 868 S.W.2d 767, 771 (Tex. 1994); James v. Brown, 637 S.W.2d 914, 916
(Tex. 1982). 

 Finally, the record lacks any evidence from which the jury might have derived
the $25,000 amount awarded to Kheir as fair and reasonable compensation for his
claimed mental anguish. See Bentley II, 153 S.W.3d at 53. 

 Like Kheir, evidence supporting Bentley's distress also included difficulty
sleeping and embarrassment in the community. See id. But, these were not the
dispositive factors that substantiated the degree of emotional injury required by
Parkway and Saenz to warrant the $150,000 damages ultimately awarded for
Bentley's mental anguish claim. To the contrary, both Bentley opinions refer to
additional evidence showing that Bentley lost time from work, and that the
allegations of corruption disrupted his family life and affected his children at school. 
Bentley II, 153 S.W.3d at 53 (citing Bentley I, 94 S.W.3d at 606-07). Bentley was
not merely "stressed," but "depressed"; he referred to the experience of being accused
of corruption "the worst of his life." Bentley I, 94 S.W.3d at 606-07. Friends
confirmed that his family's distress increased his personal suffering and that his honor
and integrity had been impugned, to the degree that "he would never be the same." 
Bentley II, 153 S.W.3d at 53 (citing Bentley I, 94 S.W.3d at 606-07). 

 For these reasons, and in accordance with the substantive principles of the
Parkway-Saenz-Bentley line of authority, see Keller, 168 S.W.3d at 810 ("situation
(b)"), as well as the Keller standards that control legal-sufficiency review, we hold
that the evidence from the trial of this case would not enable reasonable and fair-minded people to arrive at the verdict reached by the jury here in awarding Kheir
$25,000 for mental anguish and suffering. See Keller, 168 S.W.3d at 827. We
therefore hold that the evidence is legally insufficient to support the jury's award of
$25,000, in response to question 6 of the jury charge. 

 We sustain El-Khoury's second point of error. 

Consequences of Lack of Evidence of Mental Anguish


A. Punitive Damages

 Well-settled law holds that a party may not recover punitive, or exemplary,
damages unless the party recovers actual damages. E.g., Jim Walter Homes, Inc. v.
Reed, 711 S.W.2d 617, 618 (Tex. 1986). Having concluded that Kheir may not
recover the only actual damages awarded by the jury, we are compelled to hold that
Kheir may not recover punitive damages. See id. Accordingly, we sustain El-Khoury's third point of error, in which he contends that the evidence is legally
insufficient to support recovery of $147,000 in punitive damages, in response to
question 8 of the jury charge. See Keller, 168 S.W.3d at 810 ("situation (b)"). 

B. Remand Required

 We addressed El-Khoury's second point of error at the outset because rendition
of "the judgment that the trial court should have rendered" would ordinarily result
from sustaining a legal-sufficiency challenge. See Tex. R. App. P. 43.3. Though no
evidence supports either the $25,000 damages award or, therefore, the $147,000
punitive damages award, we must remand for new trial in this case because El-Khoury preserved his "no evidence" complaint by moving for a new trial. 

 A party may preserve a legal sufficiency challenge in a motion for new trial. 
Cecil, 804 S.W.2d at 510-11. El-Khoury, however, never sought rendition of a
different judgment in the trial court on the grounds that no evidence supported the
$25,000 awarded for mental anguish damages. (8) See Werner v. Colwell, 909 S.W.2d
866, 870 (Tex. 1995); Horrocks v. Tex. Dep't of Transp., 852 S.W.2d 498, 499 (Tex.
1993). We may not enlarge the relief preserved through the method that El-Khoury
chose and must, therefore, remand for a new trial. See Werner, 909 S.W.2d at 870. In addition, we may not order a separate trial solely on the issue of damages
when, as here, the parties contested liability at trial. See Tex. R. App. P. 44.1(b);
Willis v. Donnelly, 199 S.W.3d 262, 276 n.27 (Tex. 2006) (quoting rule); Estrada v.
Dillon, 44 S.W.3d 558, 562 (Tex. 2001). Lack of legally sufficient evidence to
support the jury's award of damages thus necessarily vitiates not only the jury's
responses to the actual and punitive damages questions, but the entire verdict on
Kheir's defamation claim. In addition to the jury's damages findings in response to
questions 6 and 8 of the charge, the entire verdict on Kheir's defamation claim also
includes the jury's finding of defamation, in response to question 5 of the charge, and
clear and convincing evidence of malice, in response to question 7 of the charge. 

 Accordingly, we reverse the judgment of the trial court in its entirety, with
respect to Kheir's defamation claim, without addressing the issues raised by El-Khoury's first point of error.

Agreement to Transfer


 El-Khoury's fourth point of error challenges the jury's findings relating to the
agreement to transfer by contending that the evidence is factually insufficient to
support the jury's findings. The jury's findings concerning the agreement to transfer
appear in questions 1, 9, 11, and 12 of the charge. 

 To present a factual-sufficiency challenge on appeal, a party must have
preserved the challenge in the trial court in a motion for new trial. Tex. R. Civ. P.
324(b)(2), (3); Cecil, 804 S.W.2d at 510; see also Tex. R. App. P. 33.1(a)(1) (stating
general requirements for preservation of error). El-Khoury challenged the jury's
responses to questions 1, 9, 11, and 12 of the charge in his motion for new trial, but
solely on the grounds that the responses conflicted. El-Khoury did not argue, as he
does in this Court, either that the evidence is factually insufficient to support the
findings or that the jury's findings are against the great weight and preponderance of
the evidence. 

 We conclude that El-Khoury did not properly preserve his fourth point of error,
which we overrule accordingly.

Attorney's Fees


 In his fifth point of error, El-Khoury contends that the trial court abused its
discretion by awarding Kheir attorney's fees. Once again, we conclude that El-Khoury did not preserve error, as required by Tex. R. App. P. 33.1(a)(1). El-Khoury
contends on appeal that the trial court abused its discretion because Kheir failed to
establish that he was entitled to attorney's fees as are equitable and just, as authorized
by the Declaratory Judgment Act. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(Vernon 1997). El-Khoury did not present these arguments to the trial court, where
he argued, in his motion for new trial, that no statutory authority existed for the
attorney's fees award to Kheir. 

 We overrule El-Khoury's fifth point of error.

Conclusion


 We reverse the portions of the judgment of the trial court that pertain to Kheir's
defamation claim and the damages awarded to Kheir pursuant to that claim, including
the awards of prejudgment and postjudgment interest. In all other respects, we affirm
the judgment of the trial court. 

 




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.


Justice Keyes, concurring and dissenting.
1. Based on these answers, the jury did not respond to questions 3 and 4, concerning
damages related to questions 1 and 2.
2. The jury found no damages for lost profits, harm to Kheir's "good name and character
among his . . . friends, neighbors, or acquaintances, his "good standing in the
community," or his "personal humiliation."
3. Given the response to question 12, the jury did not answer question 13, concerning
a sum of money that would compensate El-Khoury for Kheir's failure to comply with
the agreement. The jury also did not respond to question 14, concerning attorney's
fees for El-Khoury's counsel. 
4. Whether a publication is defamatory is initially a question of law for the court, which
resolves the question by considering the allegedly defamatory statement as a whole,
rather than in isolation, to determine how a person of ordinary intelligence would
perceive it. See Bentley v. Bunton, 94 S.W.3d 561, 579 (Tex. 2002); Turner v. KTRK
Television, Inc., 38 S.W.3d 103, 114 (Tex. 2000); Musser v. Smith Protective Servs.,
Inc., 723 S.W.2d 653, 654-55 (Tex. 1987); Harvest House Publishers v. Local
Church, 190 S.W.3d 204, 210 (Tex. App.--Houston [1st Dist.] 2006, pet. denied)
. 
If the language of the statement is ambiguous or of doubtful import, the trial court
may submit a question to the jury to determine whether the statement is defamatory. 
See Denton Pub. Co. v. Boyd, 460 S.W.2d 881, 884 (Tex. 1970); Harvest House
Publishers, 190 S.W.3d at 210. The court reporter's notes concerning the record of
this case show that she was not asked to transcribe the conference on the jury charge. 
Thus, though the trial court may have concluded that the language of El-Khoury's
alleged statements was ambiguous or of doubtful import and submitted the defamation
question to the jury for that reason, it is not clear from the record that the court
submitted the defamation question to the jury for that reason. 

5. Kheir contends that, because El-Khoury's statements constituted slander per se, he
was not required to prove his damages. See Graham v. Mary Kay Inc., 25 S.W.3d
749, 756 (Tex. App.--Houston [14th Dist.] 2000, pet. denied) (stating that, to be
actionable without proof of damage, slander must impute one of following: crime;
loathsome disease; injury to person's office, business, profession or calling; or sexual
misconduct). We need not decide whether El-Khoury's statements constituted slander
per se because Kheir's contention conflicts with the record, which establishes that the
jury determined whether El-Khoury defamed Kheir. Though the reporter's record
does not contain a transcription of the charge conference, nothing in the record or
Kheir's arguments suggests that he objected to the jury's deciding the defamation
question. To any extent that El-Khoury's statements constituted slander per se,
submitting a defamation question to the jury would have been superfluous. 
6. Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607 (Tex. 1996), relied on
and clarified Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex. 1995)
. See Saenz, 925
S.W.2d at 614. By relying on Saenz in Bentley v. Bunton, 94 S.W.3d 561 (Tex. 2002)
(Bentley I) (citing and quoting from Saenz, 925 S.W.2d at 614), the supreme court's
analysis encompasses both Saenz and Parkway. 
7. The jury charge did not define "mental anguish." 
8. Though the concluding prayer for relief in El-Khoury's motion for new trial
alternatively requested that the trial court "sign a judgment notwithstanding the
verdict," this request pertains to other "no evidence" points presented in the motion
for new trial. In the portion of the motion for new trial in which El-Khoury
challenges the award of mental anguish damages, he requests only a new trial.